## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CYNTHIA J. WESTON, as Trustee** | : | |
| **for the CYNTHIA J. WESTON** | : | |
| **REVOCABLE TRUST,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:04-CV-416 (DF)** |
| | : | |
| **TONY H. TOWSON,** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R

This diversity action stems from a 1999 real estate transaction involving Robert Weston , Plaintiff Cynthia J. Weston, as Trustee for the Cynthia J. Weston Revocable Trust, and Defendant Tony H. Towson, in which Robert Weston agreed to buy a piece of property from Towson for $700,000.[1]  As part of the transaction, Towson agreed to finance $200,000 of the purchase price, and Weston executed a note for that amount in his favor.  To secure the $200,000 debt, Weston executed and filed a security deed on the property in favor of Towson.  Problems associated with the transaction prompted the Westons to file a lawsuit against Towson in 2001 in this Court.  Following mediation, the parties represented to the

---

[1] Unless context indicates otherwise, where the name "Weston" appears alone in this Order, the Court is referring only to Plaintiff Cynthia J. Weston.  The name "Westons" refers to both Robert Weston and Cynthia J. Weston.

Court that the case had been settled, and, with the parties' consent, it was dismissed with prejudice. Problems between the parties persisted, however, leading Weston to file the instant lawsuit against Towson in 2004.

In this suit, Weston argues that the security deed on the property is no longer valid because the dismissal with prejudice of the 2001 suit effectively eliminated her original debt to Towson. She seeks, among other things, a declaratory judgment from this Court to the effect that the security deed, which she contends is now null, constitutes a cloud on the title to the property; she asks the Court to order Towson to cancel the deed.

Towson, on the other hand, contends that, regardless of the effect of the 2001 dismissal on his right to sue on the original $200,000 note, Weston still remains indebted to him and the prior dismissal had no legal effect on his rights under the security deed. Towson further maintains that the parties reached a binding settlement in 2001, under which Weston agreed to pay a reduced sum for the property in exchange for Towson's promise to cancel the deed, to mark the original note "satisfied and paid in full," and to dismiss with prejudice his counterclaim to collect on the note. Towson has filed a counterclaim in this suit, alleging that Weston has breached the settlement agreement by refusing to make any payment on the new debt.

Currently pending before the Court are motions for summary judgment filed by Weston (doc. 22) and Towson (doc. 24). The parties' motions raise two issues: (1) whether

the dismissal with prejudice of Towson's claim on the note in the 2001 lawsuit extinguished Weston's debt and rendered null the 2000 security deed, such that the deed now constitutes a cloud on the title to the property; and (2) whether the parties reached a binding settlement agreement in 2001 and, if so, whether Weston has breached the agreement by failing to pay Towson the agreed-upon amount.

The Court has thoroughly reviewed the record before it, the parties' arguments, and the relevant law.  For the reasons that follow, Weston's motion for summary judgment is denied, and Towson's motion for summary judgment is granted.

## I.  FACTS

### A.    Background

The facts underlying this case are simple and undisputed.  In 1999, Robert Weston agreed to buy a piece of property from Towson for $700,000—$500,000 cash due at closing, with Towson to finance the $200,000 balance.  Cynthia J. Weston, both individually and in her capacity as trustee of the Cynthia J. Weston Revocable Trust, executed a promissory note in favor of Towson for $200,000.  To secure her obligation to Towson, Weston executed and filed a security deed[2] on the property in his favor on February 9, 2000, in the Superior Court of Bibb County, Georgia, thus encumbering the property by vesting legal title to it (for security purposes) in Towson until Weston's debt was satisfied.

---

[2] *See* O.C.G.A. § 44-14-60 (Lexis 2002).

In 2001, the Westons sued Towson in this Court for breach of contract and fraud arising out of the 1999 property transaction.[3]  Towson asserted a counterclaim against Weston, alleging that she was in default on the promissory note and seeking a judgment against her for recovery of the note's entire unpaid balance, including interest.  Following mediation, the parties informed the Court that they had settled their claims.  The Court dismissed the suit without prejudice and gave the parties 90 days within which to reopen the case in the event that the settlement was not consummated.  The Court instructed the parties that the failure to reopen the case within the prescribed period of time would result in the case being dismissed with prejudice.  Neither the Westons nor Towson moved to reopen the case, and on December 18, 2001, the case was dismissed with prejudice.

Weston returned to this Court in 2004 by filing the instant suit.  Depending on which side is believed, the legal effect of the parties' 2001 settlement negotiations was either a binding settlement, the terms of which have never been carried out, or no settlement at all.  The undisputed facts describing the settlement negotiations will be set forth below.  For now, suffice it to say that Weston has not paid any money to Towson, and Towson has not canceled the security deed on the property.  It appears that Weston wants to sell a piece of property she has never paid for, but cannot do so while the security deed remains in place; she therefore asks the Court to assist her in having the deed canceled.  Towson, for his part,

---

[3] **Weston v. Towson**, No. 5:01-CV-89 (HL) (M.D. Ga. Aug. 29, 2001).

-4-

wants to be paid for the property and will not cancel the security deed until he is.

**B.     2001 Settlement**

Towson and the Westons agreed to mediate the 2001 lawsuit through Henning Mediation & Arbitration Services, Inc.   The parties selected a mutually agreed upon mediator, Terrence Croft.   At the conclusion of the mediation, on August 17, 2001, the parties, along with their attorneys and the mediator, executed a "Settlement Memorandum," which was "intended as a written memorandum of a binding Settlement Agreement resolving all claims arising from the above legal dispute."   (Def.'s Ex. 1.)   The Settlement Memorandum "contain[ed] all the <u>essential elements</u> of the terms and conditions of the settlement in this case."   (*Id.*)   Under those terms and conditions, the Westons agreed to pay Towson "$100,000 in full settlement of all claims."   (*Id.*)   Cynthia J. Weston was to pay Towson $40,000 "within 10 business days of executing documents" and Robert Weston was to execute a $60,000 note in favor of Towson, to be paid in 10 annual installments of $6,000, accruing interest at a rate of 6% per year.   (*Id.*)   The $60,000 note was to be secured with certain mutual fund shares held in escrow by the Westons' attorney.   (*Id.*)   The parties agreed "to execute full, general mutual releases," and Towson agreed "to release [the] security deed on subject property . . . and mark [the] original 200K note as satisfied and paid in full."   (*Id.*)   Finally, the parties agreed that "all disputes re drafting closing documents" would be "resolved by Terrence Lee Croft as Final Arbitrator."   (*Id.*)

Drafting disputes arose.  The parties could not agree on a procedure by which to manage annual distributions of mutual fund shares from the escrow account to Robert Weston.  The disagreement regarding the distributions manifested itself in a series of letters, e-mails, and proposed escrow agreements exchanged between counsel for Weston and counsel for Towson, exchanges which occasionally involved mediator Terrence Croft.  The parties agreed that the escrow account containing the mutual funds referenced in the settlement memorandum would be managed by Weston's attorney as the escrow agent.  To memorialize the rights and duties of the escrow agent and, among other things, to establish the manner in which distributions from the account would be made, Weston's attorney drafted a proposed escrow agreement.  (Ex. 1 to Def.'s Ex. 3A, docs. 31 & 32.)  Towson's attorney made revisions to the proposed agreement.  (Ex. 2 to Def.'s Ex. 3A, doc. 33.)

The agreement remained just that—a "proposed" agreement—because the parties could not agree on how the distributions from the account would be made.  Under the terms of both proposals, Robert Weston and Towson would each have to authorize a distribution in writing before it could be made.  In the event that Towson failed to submit a written authorization within 3 business days of the escrow agent's request, Towson would be considered to have defaulted under the agreement.  Towson would thereafter be given additional time to authorize the distribution.  If, at the end of the prescribed period of time, Towson had yet to give written authorization for the distribution, he would be deemed to

have authorized it.  Robert Weston's proposal, however, did not address what would happen if Towson protested the distribution following notice from the escrow agent.

Towson disagreed with Weston's proposal because he did not feel it offered him sufficient protection against wrongful distributions.  He instead offered a counterproposal, suggesting the inclusion of language that would require any disagreements regarding the propriety of a distribution to be resolved by Croft, the mediator who participated in the settlement negotiations.  This mechanism, in the words of Towson's counsel, "would allow Mr. Towson to stay the transfer of the mutual fund security until a resolution of any dispute of the transfer was decided by the Final Arbitrator [sic]."  (January 8, 2003, Letter from Def.'s counsel to Terrence Croft, Def.'s Ex. 3B, doc. 28.)  Weston's counsel refused to agree to this suggestion because he thought the procedures were already "absurdly complicated;" he accordingly refused to sign the escrow agreement.  (January 2, 2003, Letter from Pl.'s counsel to Terrence Croft, Def.'s Ex. 3A, doc. 31.)  The disagreement was never resolved by the mediator.  Because the parties' disagreement over the escrow agreement could not be worked out, Cynthia J. Weston never made the $40,000 lump-sum payment to Towson, and Robert Weston never executed the $60,000 note.  According to counsel for the Westons, the failure of the parties to agree on the mechanics of the escrow-fund distributions translated into a failure of the parties to reach a settlement *at all* on the claims involved in the 2001 lawsuit.  The Westons' counsel wrote to Croft that "at this point, there has clearly been no

-7-

meeting of the minds, there is no agreement." (*Id.*)

Robert Weston is not a party to this lawsuit. Cynthia J. Weston has moved for summary judgment on her declaratory-judgment claim, asking the Court to order that the security deed be canceled. Towson has moved for summary judgment on his breach-of-contract counterclaim, asking the Court to enforce the terms of the parties' binding settlement agreement.[4]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence. ***Id.*** at 249. Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).

---

[4] Towson also seeks attorney's fees under O.C.G.A. § 13-6-11. That request is denied.

## III.  PARTIES' CONTENTIONS

Weston argues that she is entitled to a declaratory judgment stating that her debt to Towson was completely extinguished by operation of the dismissal with prejudice of the 2001 lawsuit (specifically, the dismissal with prejudice of Towson's claim to collect on the $200,000 note).  She argues that her debt to Towson was extinguished by virtue of the fact that Towson is precluded by the doctrine of res judicata from bringing a suit to enforce the underlying note.  She reasons that, because Towson's cause of action to collect on the underlying note is barred by law, the security deed on the property no longer has any legal effect and should be canceled because it constitutes a cloud on the title to the property.  Finally, Weston maintains that she and Towson never reached a binding settlement of the claims involved in the 2001 lawsuit due to the failed attempt to agree on the terms of the proposed escrow agreement between Towson and Robert Weston.  She has not moved for summary judgment on any other claims in her complaint.[5]

Towson argues that the dismissal of the 2001 suit extinguished only his subsequent right to sue on the note, not the actual underlying debt owed to him by Weston.  Towson accordingly contends that the security deed itself was not affected by the dismissal of the suit and that the deed therefore continues to remain valid and enforceable.  Towson further

---

[5] Weston has also alleged claims for: (1) failure to release a security deed, (2) slander of title, and (3) conventional quia timet.  (Compl. ¶¶ 16-32.)

argues that he and Weston entered into a binding settlement agreement, through which Towson agreed to accept, and the Westons agreed to pay, $100,000 for the property in question.  According to Towson, the parties reached a meeting of the minds concerning the essential terms of the settlement, as reflected by the settlement memorandum, notwithstanding the subsequent disagreement concerning the escrow account.  Their agreement, argues Towson, constituted a novation of the original $200,000 obligation.  In return for the Westons' promise to pay $100,000 for the property, Towson agreed, as part of the settlement, to cancel the security deed and mark the original $200,000 note "paid in full."  Towson maintains that Cynthia J. Weston has breached the settlement agreement by not making any payment toward her debt.[6]  Finally, Towson states that he stands ready and willing to cancel the security deed and mark the original note paid in full as soon as he receives the $100,000, plus any accrued interest.

## IV.  DISCUSSION

### A.    Weston's Motion for Summary Judgment

Weston argues that the dismissal with prejudice of the 2001 lawsuit is "the functional equivalent of payment in full of . . . any liability Plaintiff has pursuant to the [$200,000] Promissory Note."  (Pl.'s Mot. Summ. J., doc. 22, at 6.)  Because Towson's counterclaim seeking payment on the $200,000 note was dismissed with prejudice in 2001, Weston points

---

[6] It does not appear that Robert Weston has paid any amount toward his $60,000 debt.

out that "Towson is, therefore, barred from asserting in this case, or otherwise, any claim on the promissory note *and also on the Deed*."[7] (*Id*. at 7) (emphasis supplied). From that observation, Weston reasons that: "As Towson is now barred from asserting any claim on the Promissory Note, the Security Deed that secured it, is a mere cloud on the title of the subject real estate . . . [because the security deed] no longer secures any viable obligation of Weston to Towson." (*Id*.)

Weston is only partially right. The dismissal with prejudice of the 2001 suit (and thus the dismissal of Towson's counterclaim for nonpayment of the original $200,000 note) does, as Weston suggests, serve to preclude Towson under the doctrine of res judicata from ever again bringing suit to collect on the $200,000 note.[8] But the dismissal of Towson's claim

---

[7] The Court rejects Weston's contention that the dismissal with prejudice of Towson's claim on the note bars a subsequent action to enforce his rights under the security deed. Those remedies are distinct, and the unavailability of one does not foreclose the possibility of pursing the other. *See Taylor v. Thompson*, 282 S.E.2d 157, 158 (Ga. Ct. App. 1981) (citing *Oliver v. Slack*, 14 S.E.2d 593 (Ga. 1941)) (recognizing distinction in context of election of remedies).

[8] The doctrine of res judicata encompasses the doctrines of claim preclusion and issue preclusion. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir. 1991). Dismissals with prejudice are examined under the doctrine of claim preclusion. *Id.* "Claim preclusion bars a plaintiff from bringing a subsequent lawsuit when four requirements are met: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." *Id.* (citation omitted). It is undisputed that Towson would be precluded from maintaining a cause of action to collect on the underlying $200,000 note. First, a dismissal with prejudice is "on the merits" for purposes of claim preclusion. *See* 18 MOORE'S FEDERAL PRACTICE ¶ 131.30[3][c][ii] (3d. ed 2004). Second, the dismissal was entered by this Court, which was a "court of competent jurisdiction" because the requirements for diversity jurisdiction were satisfied, and the Court therefore had jurisdiction over the subject matter of the pending claims. Third, the parties to this suit, Towson and Cynthia J. Weston, were parties to the 2001 suit. Fourth, Towson is barred from suing on the original note because that is the same cause of action he asserted as a counterclaim in the 2001 litigation.

on the note, and the procedural bar it now imposes, foreclosed only one of the possible *remedies* at Towson's disposal for satisfying the debt owed by Weston.  It did not extinguish the debt itself.  Towson, as the payee of a note secured by real property, has more than one remedy for enforcing the underlying debt.  One of those remedies arises under the note—an in personam claim against Weston as the maker of the note.  Two additional remedies arise under the deed to secure debt—the power of sale and the right to foreclose on the property. The dismissal of Towson's in personam claim against Weston for payment on the note did not extinguish Towson's rights under the security deed because Weston never satisfied the debt evidenced by the note.[9]  Thus, the 2001 dismissal did not render the security deed invalid.

Under Georgia law, "[a] security deed stands alone so long as the underlying debt remains, and [the holder of the deed] is not obligated to satisfy it until the debt is paid *regardless of the note's enforceability*."  ***Decatur Fed. Sav. & Loan v. Gibson***, 489 S.E.2d 820, 822 (Ga. 1997) (emphasis supplied); *see* O.C.G.A. § 44-14-43; ***Sammons v. Nabers***, 197 S.E. 284 (Ga. 1938); ***Brinson v. McMillan***, 440 S.E.2d 22, 23 (Ga. 1994) ("Provided

---

[9] The original debt was extinguished, if at all, by contract between the parties.  If the parties executed an enforceable novation, as Towson argues, then the original $200,000 debt was extinguished and the newly agreed-upon $100,000 debt was substituted in its place.  If the parties did not execute an enforceable contract, as Weston argues, then the $200,000 debt reflected in the original note remains undisturbed and unsatisfied, even though, as discussed above, Towson is barred from suing to enforce the note.  The Court will discuss below whether the settlement documents executed by the parties constitute an enforceable contract.

-12-

that the right to foreclose or otherwise recover the land conveyed by the security deed is not

barred by the provisions of O.C.G.A. § 44-14-83, *even if . . . an action to collect the debt is*

*barred* by the statute of limitation, such would not prevent [the grantee] from exercising [his]

rights under the security deed.") (emphasis supplied); ***Minton v. Raytheon Co.***, 473 S.E.2d

177, 178 (Ga. 1996) ("*Although the [grantee] is foreclosed from collecting on the underlying*

*promissory note* due to the expiration of the statute of limitation, it retains its rights pursuant

to its ownership interest under the deed to secure debt on the subject property.") (emphasis

supplied).

   The cases quoted above implicitly recognize the following legal principle, which the

Court finds dispositive of Weston's motion for summary judgment:

> [I]n creating the debt and in giving the security the debtor ma[kes] two
> contracts and contract[s] for two remedies:  one on the debt, the other on the
> security; . . . the debt itself was not extinguished by the [prior judgment], which
> only barred the *remedy thereon*; . . . notwithstanding the [prior judgment] the
> debt continued, not only as a moral obligation, but as a legal claim so far as to
> furnish a consideration sufficient to support a new promise; . . . the claim
> therefore remained in existence as a principal debt to which the security still
> attached as an incident; . . . hence . . . the remedy on the security might be made
> effective, even though the remedy on the main debt was barred. . . . *The security*
> *may therefore be held until the debt is paid, not simply until it is barred*.

***Klosterman v. Tudor***, 315 S.E.2d 920, 922 (Ga. Ct. App. 1984) (quoting ***Conway v. Caswell***,

48 S.E. 956 (Ga. 1904)) (emphasis supplied).  As in ***Conway***, the underlying debt in this case

"was not extinguished by the [dismissal with prejudice], which only barred the remedy

thereon [that is, a suit on the note]."  48 S.E. at 956.

Though the cited cases address situations in which a suit on the underlying note was barred by the statute of limitations—not by res judicata, as in this case—the Court finds that the legal principle for which they stand applies with equal force here.  In the event that an in personam action to enforce payment on a note secured by a security deed is legally barred, whether such action is barred by a statute of limitation or otherwise, the holder of the note continues to retain remedies under the security deed so long as the debt evidenced by the note has not been satisfied and the remedies flowing from the security deed are not themselves barred by statute or otherwise.

Because the Court's prior dismissal did not by operation of law extinguish Weston's underlying $200,000 debt (only the remedy under the note), and even though Towson cannot now maintain a suit to enforce the note evidencing that debt, the security deed recorded on February 9, 2000, remains valid, and Towson retains rights under it because neither his power of sale nor his right to foreclose on the property has yet to expire.  *See* O.C.G.A. § 44-14-80; *see also* **Williams v. O'Connor**, 64 S.E.2d 890, 892 (Ga. 1951).

For these reasons, Weston's motion for summary judgment is denied.

**B.     Towson's Motion for Summary Judgment**

Towson argues that he and the Westons entered into a binding contract on August 17, 2001, when they executed a written settlement memorandum, which "contain[ed] all the essential elements of the terms and conditions of the settlement in this case." (Def.'s Ex. 1.) Because Weston has not performed the financial obligations imposed upon her by the terms of that agreement, Towson contends that Weston has breached the contract and asks the Court to enter a judgment enforcing the terms of the settlement. (Def.'s Br. Supp. Mot. Summ. J., doc. 25, at 5.)  Weston argues that the parties' dispute about the terms of the escrow agreement precludes a finding that they reached a meeting of the minds on all the essential terms of the agreement.  She therefore contends that no binding contract exists.  As a fallback position, Weston argues that, even if an enforceable agreement exists, the Court should treat Towson as having waived any claim to enforce its terms by "not initiat[ing] the instant action" and by "leaving this issue dormant and refusing to enforce . . . [for] over four years . . . what he purports is a settlement agreement." (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J., doc. 53, at 8.)

### The Settlement Memorandum

According to the written settlement memorandum executed by the Westons and Towson and their attorneys, the parties exchanged a number of promises in consideration for settlement and dismissal of the case: (1) Cynthia J. Weston promised to pay Towson $40,000

-15-

"in 10 business days of executing documents;"[10] (2) Robert Weston promised "to give Tony Towson a Note for $60,000, payable $6,000/yr principal, 6% interest per annum, paid annually for 10 yrs, the balance secured by mutual fund shares of Fidelity or American Fund, held by Louis Cohen [sic] in escrow;" (3) the parties promised "to dismiss with prejudice all claims in Civ Action 5:01-CV-89-3 (HL) in USDC, M.D. Macon;" (4) all parties promised "to execute full, general mutual releases;" (5) Towson promised "to release security deed on subject property and quit claim any interest to C J Wes Trustee & mark original 200K Note as satisfied and paid in full." Finally, the parties agreed that "all disputes re drafting closing documents [ ] be resolved by Terrence Lee Croft as Final Arbitrator." (Def.'s Ex. 1.)

"A settlement agreement is a contract, and it 'must meet the same requirements of formation and enforceability as other contracts. Only when a meeting of the minds exists will an agreement be formed. [However,] the law . . . favors compromise, and when parties

---

[10] Though neither party has mentioned it, the Court takes judicial notice of the fact that the 2000 security deed contains a "dragnet" or "open-end" clause, which provides that: "This deed *shall secure any and all other indebtedness or liability* now existing or that *may be hereinafter incurred* by the Grantor [Weston] to the Grantee [Towson], directly or indirectly, as principal, endorser, guarantor, or otherwise, during the time this instrument remains unsatisfied on the public records." (Def.'s Answer in 5:01-CV-89 (HL), Ex. 2, at 2.) *See* O.C.G.A. § 44-14-1 ("[T]he operation of 'open-end' clauses contained in . . . deeds conveying realty as security for a debt . . . is limited to other debts or obligations arising ex contractu . . . between the original parties to the security instrument."). Such clauses "continue to be effective so long as there exists indebtedness between the grantor and the grantee." *Citizens & Southern DeKalb Bank v. Hicks*, 206 S.E.2d 22, 24 (Ga. 1974). Under the terms of the deed, then, the $40,000 debt Cynthia J. Weston incurred as a result of the parties' novation is secured by the subject property because: (1) there has existed indebtedness between Cynthia J. Weston and Towson from January 21, 2000 (the date of the original $200,000 note) to the present, (2) Cynthia J. Weston and Towson were the original parties to the security deed, and (3) the $40,000 obligation arose from a contract.

have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced.'" ***DeRossett Enterprises, Inc. v. General Elec. Capital Corp.***, 621 S.E.2d 755, 756 (Ga. App. 2005) (citation omitted).

"No contract exists until all *essential* terms have been agreed to." ***Bridges v. Bridges***, 349 S.E.2d 172, 174 (Ga. 1986) (citing O.C.G.A. § 13-3-2) (emphasis supplied).  If, in negotiating a contract, two parties execute a written document that leaves some essential term to be determined in the future, they have not at the time of the document's execution agreed to *all* the essential terms of their agreement.  Instead of entering into an enforceable contract, the parties in such a case have reached only an "agreement to agree" at some later date.  *See **Kreimer v. Kreimer***, 552 S.E.2d 826, 829 (Ga. 2001) ("If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'").

It is undisputed that Weston and Towson assented to each of the terms contained in the written settlement memorandum.  What they dispute is the legal consequence of that document.  Specifically, they dispute whether the terms in the memorandum constitute all or only some of the essential terms of their agreement.  If the memorandum reflects *all* of the essential terms, then it is an enforceable contract, irrespective of the later disagreement about the mutual fund distributions.  If, on the other hand, those terms constitute only *some* of the essential terms of the agreement, and Towson and the Westons intended to leave additional

-17-

essential terms for future resolution, then the memorandum constitutes only an unenforceable "agreement to agree."

The issue for determination in this case is thus whether certain procedures related to the escrow account's maintenance—particularly, the manner in which the collateral would be distributed from the account, the manner in which protested distributions would be resolved, and what would happen to the collateral during the pendency of a protest (whether the distribution would be stayed or not)—were *essential* terms of the parties' settlement agreement even though they were not included in the written memorandum.  If so, the 2001 settlement is unenforceable because Weston and Robert Towson never reached an agreement with regard to the distribution process.  If the mechanics of the distribution process were of only subsidiary concern, and therefore inessential to the settlement agreement, then the settlement memorandum constitutes an enforceable contract.

Questions regarding the existence and meaning of a contract should be resolved by looking at the parties' intent.  *See* O.C.G.A. § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties.  If that intention is clear . . . it shall be enforced irrespective of all technical or arbitrary rules of construction.").  Here, the parties' intentions are evidenced by the settlement memorandum's plain and unambiguous words, which state that: "This memorandum contains **all** the <u>essential elements</u> of the terms and conditions of the settlement in this case." (Def.'s Ex. 1.) (first emphasis supplied).  That the memorandum

-18-

was to be followed by the drafting and execution of "formal settlement documents" is of no legal consequence. *See May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) ("A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later.").

If the Court were to accept Weston's argument, and thus treat the memorandum as containing only *some* of the material terms of the settlement, the result would be to render meaningless the word "all" in the phrase "all the essential elements of the terms and conditions." (Def.'s Ex. 1.)  The Court will not interpret the memorandum as saying something it does not, however, because "[i]t is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." *Homelife Communities Group, Inc. v. Rosebud Park, LLC*, No. A06A0258, 2006 WL 1719548, at *2 (Ga. Ct. App. June 23, 2006).  Weston's proposed interpretation is flatly contrary to the language—assented to by both the parties and their attorneys—used in the memorandum.

The Court finds that it is clear from a plain reading of the settlement memorandum that the manner in which the annual account distributions were to be carried out and the specific manner in which distribution protests would be handled were not essential terms of the settlement, but instead were merely facilitative, ancillary, and incidental—that is, inessential—to the agreement.  They were not the details of the agreement upon which the

settlement turned.  The fact that the attorneys spent months (and ultimately years) following the execution of the August 17, 2001, settlement memorandum getting bogged down in the minutiae—the "absurdly complicated" minutiae, according to Weston's counsel—of the proposed escrow agreement cannot render unenforceable the binding contract formed by the parties' mutual assent to the material terms of the settlement.

With the execution of the memorandum on August 17, 2001, the parties created an enforceable contract: (1) the parties were identified, (2) sufficiently detailed mutual obligations were exchanged, (3) a with-prejudice dismissal of the suit and a full release of all claims were agreed upon, (4) shares from identifiable mutual funds were pledged as collateral for the $60,000 note, and (5) the parties and their attorneys signed the document.

Weston's fallback argument—that Towson has waived his right to seek enforcement of the settlement agreement by not initiating a lawsuit quickly enough—is without merit. Towson's counterclaim is one for breach of contract.  In Georgia, contract claims are governed by a six-year statute of limitation. *See* O.C.G.A. § 9-3-24 (Lexis 2005).  Towson's counterclaim is based on a contract executed on August 17, 2001.  Even assuming for the sake of argument that the statute of limitation began to run on the date the memorandum was executed, it is clear that Towson's counterclaim is timely and has not been waived.

The promise to pay Towson a total of $100,000 is an obligation the Westons agreed to incur in exchange for Towson's promise to cancel the security deed, his promise to mark

the original $200,000 note paid in full, and his promise to forego any future legal proceedings for the purpose of collecting on the underlying note.  To date, no payments on the $100,000 obligation have been made.  Until that debt is satisfied, Towson is under no obligation to cancel the security deed or mark the $200,000 note paid in full.

## V.  CONCLUSION

For the reasons stated above, Weston's motion for summary judgment (doc. 22) is hereby **DENIED**, and Towson's motion for summary judgment (doc. 24) is hereby **GRANTED**.


SO ORDERED, this 4th day of August, 2006.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew

-21-